CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 14 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRYAN K. BEATTY, ) | |
|     Plaintiff, ) | Civil Action No. 7:02-cv-00506 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| GENE JOHNSON, et al., ) | By: Hon. James C. Turk |
|     Defendants. ) | Senior United States District Judge |

Plaintiff Bryan K. Beatty, a Virginia inmate proceeding pro se, claims that a restrictive grooming policy for male inmates is an unjustifiably punitive measure, in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et. seq. The defendants filed a motion to dismiss and a motion for summary judgment, arguing that RLUIPA is unconstitutional on several grounds and that Beatty is not entitled to relief under RLUIPA.[1] Beatty responded to defendants' motions, making the matter ripe for the court's consideration. Upon review of the record, the court concludes that the motion for summary

---

[1] The court earlier dismissed Beatty's claims under 42 U.S.C. § 1983 that the grooming policy violated his constitutional rights. The court allowed Beatty's RLUIPA claims to go forward, however. Defendants filed a motion to dismiss on grounds that RLUIPA was unconstitutional. The United States intervened to defend the statute. In January 2003, this court decided in a similar case that the section of RLUIPA that applied to inmates violated the Establishment Clause. See Madison v. Riter, 240 F. Supp. 2d 566 (W.D. Va. Jan. 23, 2003), rev'd 355 F.3d 310 (4th Cir. Dec. 8, 2003), cert. denied, 125 S. Ct. 2536 (March 30, 2005). Based on the January 2003 Madison decision, the court dismissed Beatty's RLUIPA claims, and he and the United States appealed. After the United States Court of Appeals for the Fourth Circuit reversed the Madison decision, that court remanded the Beatty case for reconsideration. The court stayed the action, pending the United States Supreme Court's decision on a petition for a writ of certiorari in the Madison case. In March 2005, the Supreme Court held that RLUIPA does not violate the Establishment Clause, Cutter v. Wilkinson, ___U.S.___, 125 S. Ct. 2113 (2005), and thereafter, the Court denied certiorari in Madison. The court then reinstated Beatty's case to the active docket and granted defendants an opportunity to file a motion for summary judgment as to any additional defenses they might have as to Beatty's claims under RLUIPA.

1

judgment must be granted.

I.

Section 3 of RLUIPA prohibits governments from enacting regulations, including rules of general applicability, or otherwise taking actions that impose a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that imposition of that burden furthers "a compelling governmental interest" by "the least restrictive means." § 2000cc-1(a)(1)-(2). This strict-scrutiny standard applies any time such a burden on religious exercise occurs "in a program or activity that receives Federal financial assistance," or "affects, or removal of that substantial burden would affect," interstate or foreign commerce. Id. The statute creates a private cause of action for persons who allege that a government has substantially burdened their religious conduct. § 2000cc- 2(a). Plaintiff bears the burden of persuasion on whether the challenged law places a substantial burden on his exercise of religious belief; only if plaintiff proves this threshold issue is the government program put to the burden of proving that the imposition of the burden furthers a compelling interest by the least restrictive means. § 2000cc-2(b).

On December 15, 1999, the Virginia Department of Corrections (VDOC) began enforcing Departmental Operating Procedure 864 (hereinafter DOP 864), setting forth new personal grooming standards for all inmates who are incarcerated in VDOC facilities. Def. Mem., Dkt. #42, Johnson Affid., Enclosure A (DOP 864, dated 11-15-99). The policy covers hair care, hair style, beards, mustaches, fingernails and general hygiene. Defendants assert that this grooming policy, modeled after a similar policy implemented by the South Carolina Department of Corrections in August of 1997, was designed to promote safety, security and

2

sanitation and to facilitate the identification of inmates. DOP 864 directs that male inmates must keep their hair no more than one inch in depth and thickness. Male inmates may not wear beards, goatees or sideburns below the middle of the ear unless they obtain an order from medical staff exempting them from shaving. Mustaches must be neatly trimmed and may not extend beyond the corner of the mouth or over the lip. Men who get a no-shave order from medical staff must keep their facial hair trimmed to one half inch in length or shorter. DOP 864 prohibits male inmates from wearing such hair styles such as braids, plaits, dreadlocks, cornrows, ponytails, buns, mohawks, partially shaved heads, designs cut into the hair and any style which could conceal contraband.

Defendants offer evidence that an inmate's failure to comply with the DOP 864 standards could pose security risks, health hazards, and identification difficulties. Thus, the DOP authorizes prison officials to manage such inmates as potential risks to institutional order and safety. See DOP 864.4(J). Inmates who refuse to cut their hair, beards and/or fingernails or to alter their hair styles to comply with the specifications of this procedure will be given an order to do so. If an inmate continues to refuse to comply, he will be charged with a violation of Major Offense Code 201, disobeying a direct order, and be placed on pre-hearing detention. If convicted of a 201 violation for failing to comply with DOP 864, that inmate will serve an isolation sentence. If he is convicted of two more violations, he will serve two additional, longer isolation sentences, and then be referred to the Institutional Classification Authority for assignment to segregation, possible reclassification to a higher security level institution and a reduction in the rate at which he can earn good time or earned sentence credit. The inmate will remain assigned to segregation until the inmate fully complies with the grooming standards.

3

Beatty has been housed in segregation since 1993 because of his extensive record of felony and disciplinary convictions committed during his incarceration. He was in segregation at Red Onion State Prison (ROSP), a super maximum security facility, when the VDOC implemented DOP 864 and ordered him to cut his hair. Beatty asserted in his March 2002 complaint and attachments that he wears his hair long in keeping with unspecified religious beliefs. When he refused to allow his hair to be cut in December 1999,[2] he was charged with disciplinary infractions, pursuant to the grooming policy penalty provisions, and placed on indefinite isolation status. At that time, DOP 864 authorized VDOC officials to keep noncompliant inmates like Beatty on indefinite isolation-like status so long as they continued to refuse to comply with the grooming policy. Def. Mem., Dkt. #42, Johnson Affid., Enclosure A (DOP 864, dated 11-15-99). The additional restrictions included suspension of all visitation and telephone privileges (with exceptions for legal calls) and commissary privileges (except for items authorized in isolation status and one walkman radio with a headset and adapter). Id. at DOP 864-7.8. Beatty asserted that imposing isolation restrictions on him, when he was already in segregation, violated the First Amendment and RLUIPA because the additional isolation restrictions constitute nothing more than arbitrary punishment for his religious expression. He complained that the restrictions imposed because of his noncompliance with the grooming policy prevented his mother from speaking with him by telephone and from having non-contact visits with him. He sought monetary damages and injunctive and declaratory relief.

In his response to defendants' motion, Beatty admits that in October 2003, prison

---

[2]RLUIPA took effect in September 2000. Therefore, Beatty's claims for monetary damages under that statute, if any, could arise only from events that occurred thereafter.

officials revised DOP 864 and lifted the additional, isolation-like restrictions about which he had complained. He still believes, however, that the DOP 864 penalties for noncompliant inmates violate RLUIPA's least restrictive means test.

II.

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). However, the moving party is not entitled to summary judgment if the parties' dispute over a material fact is "genuine." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Id. When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Rule 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Id.

A.

Defendants' constitutional challenges to RLUIPA have been decided. In Cutter v.

5

Wilkinson, ___U.S.___, 125 S. Ct. 2113 (2005), the United States Supreme Court held that RLUIPA does not violate the Establishment Clause. Recently, in Madison v. Riter, this court held that RLUIPA is a valid exercise of the Spending Power and that it does not violate the Tenth or Eleventh Amendments or the Separation of Powers doctrine. ___ F. Supp. 2d ___, 2006 WL 181362 (W.D. Va. Jan. 25, 2006). Therefore, the court must deny defendants' motion to dismiss on grounds that RLUIPA is unconstitutional

B.

Defendants have also moved for summary judgment as to Beatty's claims under RLUIPA. In response to defendants' motion, Beatty admits that for years, he has been, and continues to be, assigned to segregation at Red Onion because of his past felony and disciplinary convictions. It is undisputed that under the current version of DOP 864, Beatty's decision to wear his hair long for religious reasons does not subject him to restrictions any more severe than those he experiences in any event as a segregation inmate. Thus, Beatty has no claim that the enforcement of DOP 864 currently places any burden whatsoever on his personal religious beliefs. Absent such a burden, defendants need not defend the DOP under RLUIPA's least restrictive means test. § 2000cc-2(b). As Beatty cannot prove any ongoing violation of his rights under RLUIPA, defendants are entitled to summary judgment as to his claims for injunctive relief.

Beatty argues, however, that he is entitled to monetary damages because the additional isolation restrictions authorized in the earlier version of the DOP placed a substantial burden on his religious exercise in violation of RLUIPA. Beatty argues that these restrictions, when imposed on violators of the grooming policy already housed in segregation and away from the

6

general population, were purely punitive because they did not further any compelling prison interest and did not pass the "least restrictive means" test of RLUIPA. Thus, he seeks monetary relief for the period between September 2000, when RLUIPA took effect, and October 2003, when the isolation-like restrictions were lifted. Defendants argue that they are entitled to qualified immunity against any claim Beatty may have for monetary damages under RLUIPA,[3] and the court must agree.

State officials are entitled to qualified immunity against suits for damages if a reasonable officer facing the same situation would not have known that his actions violated plaintiff's clearly established constitutional or statutory right. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Put another way, qualified immunity shields a government official from suit if his challenged conduct was objectively reasonable in light of legal rules that were clearly established at the time of his actions. See, e.g., Saucier v. Katz, 533 U.S. 194, 201-02 (2001).

During the period in question---September 2000 to October 2003, VDOC officials could reasonably have believed that the grooming policy did not violate inmates' rights under RLUIPA. First, neither the Supreme Court nor the Fourth Circuit had yet ruled that RLUIPA was constitutional or that prison grooming policies violated its precepts. Second, in March 2000, the United States District Court for the District of Columbia had expressly found that the VDOC's grooming policy furthered compelling state interests in prison security and safety by the least restrictive means. Jackson v. District of Columbia, 89 F. Supp. 2d 48, 65-69 (Dist. D.C. 2000), vacated on other grounds, 254 F.3d 262 (D.C. Cir. 2001). The plaintiffs in Jackson were

---

[3]It is not clearly established that monetary damages are a form of relief available in a RLUIPA lawsuit, and the court need not decide that issue here.

federal inmates housed in a Virginia prison and brought their claims under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, et seq. RFRA, which was ruled applicable only to federal prisons and prisoners, see City of Boerne v. Flores, 521 U.S. 507 (1997), requires prison officials to justify any substantial burden placed on inmates' religious practice under the same strict scrutiny standard that RLUIPA now mandates for state prisons---by showing that the burden furthers a compelling penological interest by the least restrictive means.[4] Although the judgment in the Jackson case was later overturned on other grounds, VDOC officials could reasonably have relied on the district court's reasoning in Jackson that DOP 864 satisfied the compelling interest test in RFRA. Consequently, they could also reasonably have believed that the grooming policy met the all-but-identical test in RLUIPA and so did not violate inmates' clearly established rights under that later statute. As such, the defendant officials in this case are entitled to summary judgment on the ground of qualified immunity as to Beatty's claims for monetary damages.

III.

In conclusion, for the reasons stated, the court will grant defendants' motion for summary judgment on the ground that plaintiff is not entitled to relief on any of his claims under the First Amendment or RLUIPA. An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the

---

[4]When plaintiffs in the Jackson case appealed the district court's ruling, the United States Court of Appeals for the District of Columbia Circuit held that the lower court should have dismissed the complaint because the inmates had not exhausted their administrative remedies before filing their lawsuit, as required under 42 U.S.C. § 1997e(a). Jackson, 254 F.3d at 270-71. In so doing, however, the appellate court did not find any fault with the district court's analysis of DOP 864 under RFRA.

Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 14th day of February, 2006.

/s/ James C. Turk
Senior United States District Judge